IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| *Plaintiff,* | | |
| v. | * | Civil Case No: 1:22-cv-01053-JMC |
| **INTELLIGENT FISCAL OPTIMAL SOLUTIONS, LLC,** *et al.***,** | * | |
| *Defendant.* | | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AGAINST TAWANDA SMITH AND INTELLIGENT FISCAL OPTIMAL SOLUTIONS, LLC

Plaintiff, United States of America, filed the present lawsuit against Intelligent Fiscal Optimal Solutions, LCL ("iFOS") and Tawanda Smith ("Smith"), the president and sole owner of iFOS, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-33, on April 28, 2022. (ECF No. 1). The following motions are currently pending before the Court: (1) Plaintiff's Motion for Default Judgment as to Smith (ECF No. 96); (2) Plaintiff's Motion for Default Judgment as to iFOS (ECF No. 101); and (3) Plaintiff's second Motion for Default Judgment as to Smith (ECF No. 105). The motions are unopposed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Plaintiff's Motions for Default Judgment shall be GRANTED.

### I.   BACKGROUND

As previously stated, this matter was originally filed against the corporate and individual Defendants in April 2022. (ECF No. 1). Defendants moved to dismiss Plaintiff's complaint, which

this Court denied on September 28, 2022. (ECF No. 34). The parties proceeded through an initial period of discovery before the case was referred for mediation to Magistrate Judge David A. Copperthite on April 3, 2023, at the request of the parties. (ECF No. 53). Judge Copperthite ordered Defendants to produce certain information in advance of the mediation, setting a production deadline of August 17, 2023. (ECF No. 55). After Defendants failed to comply, Judge Copperthite extended the deadline to October 27, 2023, indicating that failure to produce the requisite documents would result in a show-cause hearing as to why Defendants should not be held in contempt. (ECF No. 65). When Defendants, once again, failed to produce the documents, Judge Copperthite held a show cause hearing on December 12, 2023. (ECF No. 72). Judge Copperthite determined that Defendants were in contempt of his prior orders but withheld the imposition of sanctions, allowing Defendants another thirty (30) days to provide the documents. *Id*. Defendants still did not comply.

Counsel for both Defendants moved to withdraw from this case on March 18, 2024, which this Court granted on April 8, 2024. (ECF Nos. 73 & 74). In granting the motion, the Court noted that iFOS, as a corporate entity, could not proceed without counsel under the Local Rules, giving iFOS a deadline of May 8, 2024 to obtain new counsel or risk default. ECF No. 74 at 3;[1] Loc. R. 101.1(a) (D. Md. 2023) ("All parties other than individuals must be represented by counsel."). iFOS failed to comply, and on May 15, 2024, the Court entered an order to show cause why default should not be entered against iFOS for such failure. (ECF No. 76). To date, iFOS remains without counsel.

The Court held a status conference on June 27, 2024, for the purpose of establishing

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document is not electronically stamped, the citation is instead to the number at the bottom of the page.

whether a pathway towards resolution of the case existed, notwithstanding Defendants' noncompliance with Judge Copperthite's orders. (ECF No. 78). Smith appeared *pro se*, along with counsel for Plaintiff. *Id*. The Court determined a precise list of documents Plaintiff indicated were necessary to facilitate settlement discussions and ordered production by July 31, 2024. *Id*. "The Court made clear on the record that the individual Defendant fully understood what was being requested" and Smith agreed that production by July 31, 2024, was feasible. *Id*.

The Court scheduled an in-person status conference for October 23, 2024, following reports from Plaintiff that Smith had stopped responding to its communications at the end of September 2024. (ECF No. 92). Smith did not appear for the conference, which the Court interpreted as "a lack of interest in resolution." *Id*. at 3. Plaintiff indicated that Smith had eventually produced documents, but that the documents produced raised further questions as to whether there remained undisclosed accounts under Smith's control which might be available to satisfy any judgment. *Id*. at 2. Accordingly, the undersigned lifted any informal stay on discovery that was pending in light of possible settlement discussions, and indicated that Plaintiff was free to pursue additional discovery from Defendants, including Smith's deposition. *Id*. at 3.

Since the hearing, Plaintiff has attempted to obtain Smith's deposition testimony on three separate occasions. (ECF No. 96-1). Plaintiff attaches an affidavit to its motion prepared by an agent assigned to this case, attesting that he attempted to serve Smith at her home on November 22, 2024, January 28, 2025, and February 25, 2025. *Id*. Smith's husband either answered the door or spoke to the agent via an intercom each time, but only agreed to accept service of the January 28, 2025, subpoena. *Id.* at 2. The agent left the other two subpoenas at Smith's door, and witnessed someone bring the November 24, 2024, subpoena indoors. *Id*. Smith did not appear for any of her scheduled depositions and has not contacted Plaintiff to discuss rescheduling. *Id*.

Presently pending before the Court are three motions for default judgment. Plaintiff first filed a Motion for the Clerk's Entry of Default against iFOS on March 13, 2025, and next filed a Motion for Default Judgment against Smith on March 17, 2025. (ECF No. 96; ECF No. 97). The Clerk's office entered default against iFOS on March 19, 2025, and sent a notice of default to iFOS the same day, providing iFOS thirty (30) days to file a motion to vacate the order of default. (ECF No. 97; ECF No. 98). Plaintiff filed a Motion for Default Judgment against iFOS on May 20, 2025 (ECF No. 101). Shortly thereafter, Plaintiff filed a Motion for the Clerk's Entry of Default as to Smith. (ECF No. 102). The Clerk entered default against Smith on May 28, 2025, and once again sent a notice explaining Smith had thirty (30) days to move to vacate the order of default. (ECF No. 103; ECF No. 104). Plaintiff filed its second Motion for Default Judgment against Smith the same day. (ECF No. 105). To date, neither Smith nor iFOS has submitted any response to the Motions for Default or moved to vacate the orders of default.

## II.  LEGAL STANDARD

### A.  Rule 37 of the Federal Rules of Civil Procedure

Under Rule 37 of the Federal Rules of Civil Procedure, "[i]f a party fails to obey an order to permit or provide discovery, fails to appear for a deposition, or fails to serve a response after being served with interrogatories or a request for production, the district court may order sanctions, including 'rendering a default judgment against the disobedient party.'" *Mey v. Phillips*, 71 F.4th 203, 218 (4th Cir. 2023) (quoting Fed. R. Civ. P. 37 (b)(2)(A)(vi), (d)(1)(A), (d)(3)). While courts typically have broad discretion in imposing discovery sanctions, when the sanction sought is default judgment, the court's "range of discretion is more narrow" because the "Court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Id.* (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88,

92 (4th Cir. 1989)); *see also Smith v. Devine*, 126 F.4th 331, 343 (4th Cir. 2025). Thus, district courts consider the following factors, known as the *Wilson* factors, in determining whether to impose default judgment as a discovery sanction:

> (1) [W]hether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Id.* (quoting *Richards,* 872 F.2d at 92). While the Fourth Circuit has historically "emphasized the significance of warning a defendant about the possibly of default before entering such a harsh sanction," it has since been clarified that an explicit warning is not necessary in every case. *Id*. (citations omitted).

The Fourth Circuit has cautioned that before entering a default judgment as a sanction for discovery violations, the Court must be satisfied that the well-pleaded allegations in the operative pleading support the requested relief. *Mey*, 71 F.4th at 223. "One of the legal effect[s] of a default judgment is that the defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact." *Marsh v. Bottoms Up Gentlemen's Club, LLC*, No. EA-23-1157, 2025 WL 744067, at *4 (D. Md. Mar. 7, 2025) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)) (internal quotation marks omitted). A defaulting party does not, however, "admit mere conclusions of law.*" Id.* (citing *Frozen Wheels, LLC v. Potomac Valley Home Med., Inc*., No. CCB-20-2479, 2024 WL 1132092, at *3 (D. Md. Mar. 15, 2024)). The Court must therefore consider "whether the unchallenged facts constitute a legitimate cause of action." *Id*.

B. <u>Rule 55 of the Federal Rules of Civil Procedure</u>

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Rule 55(a) requires that "[w]hen a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a plaintiff's claim is not "sum certain" or a "sum that can be made certain by computation," the plaintiff "must apply to the court for default judgment" under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(1)–(2).

In determining whether to award a default judgment, the Court accepts as true the well pleaded factual allegations in the Complaint as to liability. *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing *Ryan*, 253 F.3d at 780). However, "[a] complaint that avers bare legal conclusions or naked assertion[s] devoid of further factual enhancement, is insufficient to award default judgment." *Select Specialty Hosp. - Quad Cities, Inc. v. WH Administrators, Inc.*, No. CV PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (internal quotation marks omitted). Moreover, just as courts must determine if the well-pleaded allegations in the complaint support the requested relief under Rule 37, the Court must likewise consider whether the unchallenged facts constitute a legitimate cause of action under Rule 55 because a party in default does not admit mere conclusions of law. *United States v. Redden*, No. 09-cv-2688-WDQ, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the Court determines that liability is established, the Court must then determine the appropriate amount of damages or other relief. *CGI Fin., Inc., v. Johnson*, No. 12-cv-1985-ELH, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593. A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *Redden*, 2010 WL 2651607, at *2. Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." However, the Court is not required to conduct an evidentiary hearing to determine damages; it may rely on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

### III.    ANALYSIS

A. <u>Default judgment is an appropriate discovery sanction against Smith in this matter under Federal Rule 37(b) and the *Wilson* factors.</u>

As stated, the Court engages in a four-part analysis to determine whether default judgment is an appropriate discovery sanction, considering the following factors: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Richards*, 872 F.2d at 92 (citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)). Each will be addressed in turn.

The first Wilson factor directs the court to examine "whether the noncomplying party acted in bad faith." *Mey*, 71 F.4th at 219 (citing *Richards*, 872 F.2d at 92). Here, Smith has repeatedly flouted her discovery obligations under the Federal and Local Rules and ignored court orders to produce discovery despite being given ample opportunity to comply. Judge Copperthite provided

7

Smith two extensions of his deadline to produce documents and withheld sanctions despite her noncompliance. (ECF Nos. 55, 65, & 72). This Court worked with the parties on June 27, 2024 to narrow the documents Smith was required to produce by Judge Copperthite, and Smith assured the Court that production was feasible by July 31, 2024. (ECF No. 78). While some documents were eventually produced, Plaintiff still lacks substantive discovery responses. (ECF No. 96 at 4). Smith did not appear for an October 23, 2024 status conference before the undersigned, (ECF No. 92 at 3), and has refused to sit for deposition on three occasions since then. (ECF No. 96 at 4). Smith's conduct demonstrates a clear pattern of disregard for her discovery obligations and the orders of this Court which can only be characterized as bad faith. *See Mey*, 71 F.4th at 219-220 (finding a sufficient showing of bad faith based on defendant repeatedly eluding discovery orders); *Marsh*, 2025 WL 744067 at *3 (determining defendants acted in bad faith where they did not respond to discovery requests by the deadline, refused to confer with plaintiff's counsel as required under the Local Rules, and failed to comply with the court's discovery directives); *Smith*, 126 F.4th at 343 (affirming lower courts' finding of bad faith due to defendant "failing to make discovery as required, neglecting to correct discovery deficiencies, and providing false interrogatory responses").

Under the second *Wilson* factor, the court considers "the amount of prejudice [the noncomplying party] caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce." *Mey*, 71 F.4th at 220 (citing *Richards*, 872 F.2d at 92). Plaintiff has gone to substantial lengths to secure Smith's deposition testimony, including by attempting to serve her at home on three separate occasions. (ECF No. 96 at 4). Despite these efforts, Smith has failed to appear for scheduled depositions on December 12, 2024, February 20, 2025, and March 12, 2025. *Id.* Party deposition testimony is unquestionably material, and it is

particularly so in this action, where Smith is both a party in her individual capacity and the president and sole owner of iFOS. (ECF No. 1 at 1).[2] Withholding such material evidence has certainly hindered Plaintiff in discovering information relevant to its claims, thus hampering its ability to effectively build its case. The Court easily concludes that Smith's refusal to sit for deposition and otherwise fail to meaningfully participate in discovery has materially prejudiced Plaintiff.

The Court next considers "the need for deterrence of the particular sort of noncompliance." *Mey*, 71 F.4th at 220 (citing *Richards*, 872 F.2d at 92). Smith has consistently ignored her discovery obligations under the Federal and Local Rules and has refused to comply with court orders. Her inaction has "demonstrated that [she] view[s] directives of the Court as optional requests." *Marsh*, 2025 WL 744067 at *3. Repeated misconduct of this kind necessitates deterrence. *See Richards*, 872 F.2d at 92 (citing *National Hockey League v. Metropolitan Hockey Club Inc.*, 427 U.S. 639, 643 (1976)) ("[N]ot only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct."); *Smith*, 126 F.4th at 344 (quoting *Richards*, 872 F.2d at 93) ("[T]he need for deterrence is particularly strong where, as here, a party is 'stalling and ignoring the direct orders of the court with impunity.'"). This factor also weighs in favor of imposing default judgment as a discovery sanction.

Finally, the Court considers "the effectiveness of less drastic sanctions" before imposing the sanction of default judgment. *Mey*, 71 F.4th at 221–22 (citing *Richards*, 872 F.2d at 92). Default judgment is the only sanction likely to be effective against Smith. There is little

---

[2] Additionally, Plaintiff indicates that while Smith did eventually produce documents in response to the Court's June 27, 2024 Order, the documents produced suggested that Defendants possessed still-undisclosed bank accounts. (ECF No. 92 at 2). These accounts, if they exist, could be material to Defendants' ability to satisfy any judgment against them.

information in the record regarding Smith's ability to pay any monetary sanction, but Plaintiff's reference to "the limited assets available to pay any judgment" in this matter suggest that monetary sanctions are unlikely to secure compliance. Given Smith's unresponsiveness to date, it is also probable that enforcement of any monetary sanctions would "be more onerous than default judgment." *Marsh*, 2025 WL 744067 at *4. Moreover, Smith's prior disregard of the Court's orders suggests further orders are unlikely to be effective. Default judgment is the only viable sanction at this stage. *See Smith*, 126 F.4th at 344 (citing *Anderson v. Found. for Advancement*, 155 F.3d 500, 505 (4th Cir. 1998) ("[E]ntry of a default judgment [is] warranted both as a deterrent and as a last-resort sanction following the [Appellants'] continued disregard of prior warnings.").

The Fourth Circuit has historically emphasized that a district court should provide an "explicit and clear" warning to the noncomplying party imposing default judgment as a discovery sanction, *Marsh*, 2025 WL 744067 at *2, but has since clarified that an explicit warning is not required in every case. *See Mey* v. *Phillips*, 71 F.4th 203, 218 (4th Cir. 2023). The undersigned expressly cautioned Smith at the June 27, 2024 status conference that failure to produce the requested documents risked sanctions, including default judgment. (ECF No. 92 at 2). This warning was reiterated in the Court's October 24, 2024 Summary Opinion and Order. *Id.* Smith has been adequately warned that her failure to comply with discovery orders could result in a default judgment against her. Additionally, the Court notes that Smith has not responded to either of Plaintiff's motions for default filed against her. Under these circumstances, default judgment is an appropriate sanction.

As noted, before imposing default judgment as a discovery sanction, the Court must find "the well-pleaded allegations in the operative pleading support the requested relief." *Marsh*, 2025

10

WL 744067 at *4. The Court will address the sufficiency of Plaintiff's well-pleaded allegations after considering its motions for default judgment under Federal Rule 55.

    B. <u>Default judgment shall be granted as to Smith and iFOS pursuant to Rule 55 of the Federal Rules of Civil Procedure.</u>

        i. <u>Default judgment against iFOS under Federal Rule of Civil Procedure 55</u>

"It is well-settled that corporations may not proceed pro se in federal court." *TFFI Corp. v. Williams*, No. 8:13-CV-01809-AW, 2013 WL 6062385, at *4 (D. Md. Nov. 15, 2013). The Local Rules for the District of Maryland reiterate this longstanding rule. *See* Loc. R. 101.1(a) (D. Md., 2023) ("[a]ll parties other than individuals must be represented by counsel"). Counsel for iFOS moved to withdraw from this matter in March 2024. (ECF No. 73). In granting the motion, the undersigned directed iFOS to obtain new counsel by May 8, 2024 and forewarned iFOS that failure to do so by the deadline could cause them to face default judgment. (ECF No. 74). The undersigned further ordered iFOS to show cause as to why default should not be entered against it for failure to obtain new counsel on May 15, 2024. (ECF No. 76). To date, iFOS has remained without counsel, and iFOS has not responded to Plaintiff's Motion for Default Judgment or the Clerk's Entry of Default. Under these circumstances, default judgment is appropriate. *See Johnson v. Singh*, No. CCB-14-45, 2020 WL 13605448, at *2 (D. Md., Jan. 31, 2020), *report and recommendation adopted by* 2020 WL 13605446 (D. Md. Feb. 20, 2020) (recommending that a default judgment be entered after no new counsel entered for a business entity in violation of Local Rule 101.1(a)).

        ii. <u>Default judgment against Smith under Federal Rule of Civil Procedure 55</u>

"Upon motion of a party, Rule 55(a) provides that a default judgment may be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *Sparks v.*

*BlackDiamond Rest. LLC,* No. CV TDC-24-353, 2025 WL 450301, at *2 (D. Md. Feb. 10, 2025) (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). Proper service of process is a prerequisite to the entry of default, and Plaintiff bears the burden of establishing that service of process was effective. *Md. State Firemen's Assoc. v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default ... may be entered against a defendant."); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 261 (D. Md. 2015). It is undisputed that Defendants in this matter were served with Plaintiff's complaint,[3] as Defendants actively engaged in this litigation up until September 2024. Smith, however, has taken no part in proceedings since that time: she failed to appear at the October 23, 2024 in-person status conference and did not attend any of her three scheduled depositions. (ECF No. 105). Moreover, she has not submitted any response to either of Plaintiff's motions for default against her, which were filed on March 17, 2025, and May 28, 2025. *Id.*; ECF No. 96. The Clerk's office entered default against Smith on May 28, 2025, and she has not moved to vacate the order either. (ECF Nos. 103 & 104). Accordingly, provided that the allegations in Plaintiff's complaint set forth legitimate claims against Smith,[4] the Court finds that Smith has failed to defend and default judgment is appropriate under Federal Rule 55.

C. Sufficiency of Plaintiff's Well Pleaded Allegations

As discussed, one of the "legal effect[s] of a default judgment is that the defendant is deemed to have admitted 'the plaintiff's well-pleaded allegations of fact.'" See *Mey*, 71 F.4th at 223 (quoting *Ryan*, 253 F.3d at 780 ). A defaulting party does not, however, "admit mere conclusions of law." *Frozen Wheels*, 2024 WL 1132092 at *3. Accordingly, "the Court must

---

[3] Per Plaintiff's affidavit of service, both Defendants were served on June 7, 2022 by electronic mail, pursuant to agreement of the parties. (ECF No. 25).
[4] *See infra* Section III(C).

consider whether the unchallenged facts constitute a legitimate cause of action." *Id.* "These same principles apply regardless of the posture of the case when the Court contemplates entry of a default judgment[,]" including before entering default judgment as a discovery sanction. *Marsh*, 2025 WL 744067 at *4.

In Counts I, II, and III, Plaintiff alleges violations of the False Claims Act based on Defendants' engagement in "in a fraudulent scheme in connection with a contract" between iFOS and the United States Department of Homeland Security. (ECF No. 1 at 1). Count I asserts both Defendants violated § 3729(a)(1)(A) of the False Claims Act, *id.* at 47, which imposes liability where an individual "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1)(A). In Count II, Plaintiff alleges both Defendants, "with actual knowledge, reckless disregard, or deliberate ignorance, made, used, and/or caused to be made or used, false records, statements, and certifications material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B)" of the False Claims Act. (ECF No. 1 at 49). Count III asserts a violation of § 3729(a)(1)(C) of the False Claims Act against both Defendants based on their conspiracy "to get false and fraudulent claims paid by the United States." *Id.* at 51. The Court will consider all three of Plaintiff's False Act Claims together.

A False Claims Act action is comprised of four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *United States v. Walgreen Co.*, 78 F.4th 87, 92 (4th Cir. 2023) (quoting *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022)) (internal quotation marks omitted). With respect to scienter, "a person acts with the requisite scienter if they...have 'actual knowledge of the [falsity of the] information'...[or] act 'in deliberate ignorance of the truth or falsity of the information.'"

13

*United States v. Akoto*, No. 8:25-157-TDC, 2025 WL 1702951, at * (D. Md. June 18, 2025) (quoting *Taylor*, 39 F.4th at 197)); *see also* 31 U.S.C. § 3729(b)(1). Materiality is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property[.]" 31 U.S.C. § 3729(b)(4). Additionally, a party bringing a claim under the False Claims Act must plead the fraud alleged with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citing Fed. R. Civ. P. 9(b)). "To meet this standard, [a False Claims Act] plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Plaintiff sets forth Defendants' allegedly fraudulent conduct in great detail throughout its fifty-page Complaint. (ECF No. 1). In short, Plaintiff avers that in November and December 2015, Smith and other iFOS employees met with Kenneth J. Buck, Ph.D., who was then the United States Department of Homeland Security's ("DHS") Executive Director of the Office of Management Integration in the Office of the Under Secretary for Management. *Id.* at 1. Dr. Buck purportedly informed Smith of a potential DHS contract "and told her that he had drafted the Statement of Work for the contract." *Id.* at 2. Dr. Buck thereafter told his subordinate that he would be leaving DHS to work for iFOS, and four days later, iFOS was selected by that subordinate "to be the contractor on a support contract[.]" *Id.* Dr. Buck became a sub-contractor and consultant to iFOS, and worked on the same contract for which he had drafted the Statement of Work while employed by DHS. *Id.* Plaintiff alleges that Dr. Buck, Smith, and iFOS prepared and submitted a proposal to DHS which falsely identified iFOS employee B.A.S. as the advisor to the contract, "when, in

14

reality, iFOS intended to and ultimately used Dr. Buck to perform the Strategic Advisor responsibilities notwithstanding the mandatory post-employment restrictions imposed on Dr. Buck pursuant to the Ethics in Government Act[.]" *Id.* Per Plaintiff's Complaint, Dr. Buck, Smith, and iFOS conspired to conceal Dr. Buck's work on the contract and took multiple affirmative acts to hide his role, for example by using iFOS email accounts which concealed Dr. Buck's identity and removing his name from iFOS documents he wrote and edited. *Id.* at 3. iFOS and Smith, until July 2017, "knowingly submitted false invoices to DHS" which billed Dr. Buck's time under the name of iFOS employee B.A.S. *Id.* The Complaint identifies numerous specific instances of Defendants' actions to conceal Dr. Buck's work on the contract, as well as invoices submitted to DHS for payment which failed to disclose Dr. Buck's involvement despite DHS personnel repeatedly asking for the names of the individuals working on the contract. *See generally, id.* Plaintiff further asserts that it would not have entered into the contract, or would have terminated the contract with iFOS, had it known of Dr. Buck's involvement. *Id.* at 49. Ultimately, "iFOS was paid over $628,322 under the contract, including over $150,000 for nearly 700 hours worked by Dr. Buck that iFOS falsely billed under the name of iFOS employee B.A.S." *Id.* at 3.

   Accepting Plaintiff's well-pleaded allegations as true, the Court concludes that Plaintiff has pleaded adequate facts identifying "the time, place, and contents of the false representations, as well as the identity of the person[s] making the misrepresentation and what [they] obtained thereby." *Wilson*, 525 F.3d at 379. Additionally, Plaintiff alleges Defendants acted with the requisite scienter and that Defendants' fraudulent statements were material and induced DHS to pay iFOS for invoices it would not have otherwise. Plaintiff has thus sufficiently pleaded violations of the False Claims Act in Counts I-III.

   Plaintiff next asserts a breach of contract claim against iFOS in Count IV. To state a claim

for breach of contract under Maryland law, "a plaintiff must simply show that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 265 (2018) (internal quotation omitted). Plaintiff contends that iFOS owed Plaintiff a contractual duty under a March 2016 contract between iFOS and DHS. (ECF No. 1 at 53). Pursuant to that contract, iFOS was required to substantiate "individual daily job timekeeping records and verify that the employees met the qualifications for the labor categories in the contract" as well as ensure that all contractor and subcontractor personnel complete a suitability/background investigation with the DHS Office of Security. *Id.* Plaintiff further avers that iFOS breached its contractual obligations by submitting false invoices and timesheets billing Dr. Buck's time under B.A.S.' name, and by failing to submit Dr. Buck for a suitability/background investigation. *Id.* The Court finds that Plaintiff has plausibly alleged a breach of contract claim against iFOS.

In Count V Plaintiff asserts a claim for payment by mistake against iFOS.[5] "A claim for payment by mistake of fact allows the Government to recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States v. Fadul*, No. DKC 11-0385, 2013 WL 781614, at *12 (D. Md. Feb. 28, 2013). Plaintiff alleges it is entitled to recover payments made to iFOS based on a mistake of fact because it "was unaware that iFOS had submitted false claims for payment and false statements…steered the contract to iFOS by working with Dr. Buck and others, failed to submit Dr. Buck for the mandatory suitability background investigation, and participated in Dr. Buck's violations of conflict of interest obligations[.]" (ECF No. 1 at 54). Plaintiff thus has adequately plead a payment by mistake claim against iFOS.

---

[5] The undersigned previously determined that Plaintiff properly plead claims for unjust enrichment and payment by mistake, and therefore incorporates the relevant sections of the 2022 opinion by reference. *United States v. Intelligent Fiscal Sols., LLC*, No. 22-1053, 2022 WL 4537785, at *4-6 (D. Md. Sep. 28, 2022).

Finally, in Count VI Plaintiff asserts an unjust enrichment claim against Smith and iFOS. (ECF No. 1 at 54-55). "A claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651-62 (2005) (citing *Caroline Cnty. v. Dashiell*, 358 Md. 83, 95 n.7 (2000)). As this Court previously explained, Maryland courts have "not required always that a benefit conferred in an unjust enrichment action come necessarily and directly to the defendant from the plaintiff[']s own resources." *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 298 (2007) (citation omitted). Here, Plaintiff avers that it paid iFOS $628,322 for fraudulently induced services, and that Smith and iFOS were both unjustly enriched by the payment they received from the Government. Viewing the well-pleaded allegations in Plaintiff's favor, Plaintiff has sufficiently plead a claim for unjust enrichment against both Defendants.

Accordingly, the Court finds that Plaintiff has plead facts sufficient to constitute claims for violations of the False Claims Act, breach of contract, payment by mistake, and unjust enrichment. Plaintiff is therefore entitled to default judgment against both Smith and iFOS.

## IV. Damages

As noted previously, "[u]pon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Hanover Ins. Co. v. Persaud Cos., Inc.*, No. GJH-13-472, 2015 WL 4496448, at *3 (D. Md. July 22, 2015). Rather, the Court must make an independent determination regarding damages allegations. "In so doing, the Court may conduct an evidentiary hearing. The Court may also determine damages without a hearing so long as there is an adequate evidentiary basis in the record for the award." *Chanel, Inc. v. Banks*,

17

No. WDQ-09-843, 2011 WL 121700, at *4 (D. Md. Jan. 13, 2011). Under the False Claims Act, persons who violated Sections 3729(a)(1)(A)-(C) are liable to the government for three times "the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). Damages are typically measured as "the amount of money the government paid by reason of the false statement above what it would have paid absent the false statement." *Akoto*, 2025 WL 1702951 at *7. If a violation of the False Claims Act is established, the Government is also entitled to a civil penalty of not less than $13,508 and not more than $27,894 per false claim. 31 U.S.C. § 3729(a); 28 C.F.R. 85.5.[6]

Plaintiff requests the Court enter judgment in the amount of $1,334,474.10 against both Defendants. (ECF No. 101 at 1; ECF No. 105 at 5).[7] This sum is comprised of single damages in the amount of $284,824.70 for fraudulently billing Dr. Buck's services, which Plaintiff asks be trebled, resulting in $854,474.10 in damages. *Id.* The total amount also includes $480,000 in penalties, which was calculated by multiplying Defendants' twenty-four (24) false claims by a penalty figure of $20,000 per claim. *Id.* In support of its claim for damages, Plaintiff provides a declaration prepared by Asher Shapiro, a Senior Special Agent assigned to investigate this matter on behalf of DHS, as well as a spreadsheet prepared by Mr. Shapiro documenting the invoices submitted to DHS for Dr. Buck's services. (ECF No. 101-1; ECF No. 101-2; ECF No. 105-5; ECF No. 105-6). Mr. Shapiro's declaration affirms the "spreadsheet is a true and accurate depiction of iFOS's fraudulent invoices to DHS for [Dr. Buck's] services" and that "[i]n total, the Government paid defendants $284,824.70 for their fraudulent billing[.]" (ECF No. 101-1 at 2; ECF No. 105-5

---

[6] The False Claims Act provides that civil penalties are "adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." 31 U.S.C. § 3729(a). The current civil penalty range is set forth at 28 C.F.R. § 85.5.

[7] Plaintiff's first Motion for Default Judgment sought judgment in the amount of $1,884,966 against Smith, but no evidentiary basis was provided to justify the damages award. (ECF No. 96 at 6). The Court will therefore rely on the damages sought in Plaintiff's two subsequent motions for default, as they are supported by affidavit. (ECF No. 101-1; ECF No. 105-5).

at 2). He further attests that Defendants submitted twenty-four individual false claims, as evidenced by the attached spreadsheet. *Id.* Plaintiff has provided sufficient support for its claims for damages. Further, the undersigned finds that the civil penalty sought of $20,000 per false claim is reasonable, as it falls within the middle of the statutory range. *See Akoto*, 2025 WL 1702951 at *8 (determining civil penalty of $20,000 per false claim was reasonable because it is "a figure close to the midpoint). Accordingly, Plaintiff will be awarded $854,474.10 in damages plus $480,000 in civil penalties, culminating in a total award of $1,334,474.10.[8]

## V. CONCLUSION

For the aforementioned reasons, it is this, 8th day of July, 2025, hereby ordered:

1) Plaintiff's Motion for Default Judgment as to Smith (ECF No. 96) is GRANTED; and

2) Plaintiff's Motion for Default Judgment as to iFOS (ECF No. 101) is GRANTED; and

3) Plaintiff's second Motion for Default Judgment as to Smith (ECF No. 105) is GRANTED; and

4) Default Judgement is entered in favor of Plaintiff and against Defendants on Counts I-VI of the Complaint (ECF No. 1) in the total amount of $1,334,474.10; and

5) The Clerk is directed to close this case.

SO ORDERED.

Dated: July 8, 2025

/s/
J. Mark Coulson
United States Magistrate Judge

---

[8] Plaintiff additionally asks that the Court order post-judgment interest. (ECF No. 101 at 1; ECF No. 105 at 5). Post-judgment interest, however, is automatic under 28 U.S.C. § 1961 and need not be included in the order of judgment. *Timilion Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 692 n.7 (D. Md. 2024) (collecting cases).